FILED
2018 Apr-24 PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CORTNEY R. HAWKINS,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No._____ |
| | ) |
| **ROMAN CATHOLIC DIOCESE OF** | )   **JURY TRIAL DEMANDED** |
| **BIRMINGHAM,** | ) |
| **CRISTO REY NETWORK,** | ) |
| **HOLY FAMILY CRISTO REY** | ) |
| **CATHOLIC HIGH SCHOOL, and** | ) |
| **JON CHALMERS,** | ) |
| **CHERYL KUYK, individually.** | ) |
| | |
|    **Defendants.** | |

## COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. Section 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); 42 U.S.C. Section 1981; and the Equal Protection Clause. This Complaint alleges race discrimination and retaliation.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. §1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and § 1981, providing for injunctive and other relief against discrimination.

3. Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County located in this judicial

district.

4.     Plaintiff Cortney R. Hawkins has initiated all conditions precedent to the institution of this action, as required under Title VII. Plaintiff timely filed a charge of discrimination (Charge No. 420-2018-01936) on April 2, 2018, within 180 days of the occurrence of the latest discriminatory act complained of herein. When a formal Notice of Right to Sue is issued, Plaintiff will amend this complaint to include Counts under Title VII.

## STATEMENT OF THE PARTIES

5.     Plaintiff Cortney R. Hawkins (hereinafter referred to as "Plaintiff' or ""Hawkins"") is an African-American individual over the age of nineteen (19) years. She is a female resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the Holy Family Cristo Rey Catholic High School, a subordinate entity of the Roman Catholic Diocese of Birmingham.

6.     Defendants Roman Catholic Diocese (hereinafter "Diocese" and Holy Family Cristo Rey Catholic High School (hereinafter "Holy Family") are parent and subordinate nonprofit entities subject to suit under Section 1981. According to the records on file with the Alabama Secretary of State, Holy Family is a domestic, non-profit corporation, incorporated in Jefferson County. At all times relevant herein, Holy Family and Diocese were Plaintiff's joint employer. At all times relevant hereto, Cristo Rey was a joint employer of the Plaintiff. Cristo Rey and Holy Family's operations and management were highly integrated. *See* McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. Ala. 1987) (the employers

must be "highly integrated with respect to ownership and operations"). Holy Family also receives Title I Federal funds.

7. Defendant Cristo Rey Network (hereinafter "Cristo Rey"), is an entity subject to suit under §1981. At all times relevant hereto, Crist Rey was a joint employer of the Plaintiff. Cristo Rey and Holy Family's operations and management were highly integrated. *See* McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. Ala. 1987)(the employers must be "highly integrated with respect to ownership and operations").

8. Defendant Jon Chalmers (hereinafter "Chalmers") is an individual over the age of nineteen (19) years. Upon information and belief, Chalmers is a citizen of the United States and a resident of the State of Alabama. At all times relevant to this Complaint, Defendant Chalmers was an employee of Holy Family Cristo Rey Catholic Church as its President and Registered Agent.

9. Defendant Cheryl Kuyk (hereinafter, "Kuyk") is an individual over the age of nineteen (19) years. Upon information and belief, Kuyk is a citizen of the United States and a resident of the State of Alabama. At all times relevant to this Complaint, Defendant Kuyk was an employee of Holy Family Cristo Rey Catholic School as its Principal.

**STATEMENT OF THE FACTS**

10. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and affect as if fully set forth herein and further state as follows:

11. Plaintiff was an employee of the Holy Family Cristo Rey Catholic High School ("HOLY FAMILY") from July 2016 through March 8, 2018.

12. Plaintiff was hired on or about July, 2016, as a 9th and 10th grade English Teacher and 11th and 12th grade African American History Teacher.

13. On or about January 2017, Plaintiff was transferred by Chalmers to teach 9th and 10th grade in addition to 11th and 12th grade African American History.

14. Plaintiff was directed to do other various jobs during the 2016 – 2017 school year to include coach, drive school bus, and work on committees. Plaintiff was also directed to handle behavior issues for at least two weeks while the Dean of Students, Mrs. Waters, and Behavioral Specialist, Mr. Brown, were on leave for death of a close friend.

15. Plaintiff was assigned by Chalmers to be a member of the committee to select a new principal for Holy Family. Cheryl Kuyk was hired despite her testimony that she did not think she was "prepared to work at a school like this." When Plaintiff expressed concern about Kuyk's comments, Chalmers stated, "I cringed when she said that and this was not the first time she put her 'foot in her mouth.'" Further, Chalmers commented that he, the Holy Family Board and Cristo Rey all had issues dealing with Kuyk's response to questions about race. Yet, they hired Cheryl Kuyk to be principal at a school she admitted she was ill-prepared to lead.

16. Plaintiff was told by Kuyk on or about October 2017 that "these kids are fucking liars" relative to an event surrounding some of the students' discontent about the untimely departure of an English teacher.

17. On or about November 16, 2017, Plaintiff heard and observed a teacher, Kline, a White teacher, yelling extremely loud at a student. The student, A.J., asked, "can you please move? You are so close to my face." The teacher used her body to prevent the student from leaving through the door and inched closer and closer to her. Fearing for the student's safety, Plaintiff stood behind teacher Kline and motion for student A.J. to stay calm. Plaintiff reported the incident to Chalmers through e-mail.

18. On or about the first week in November 2017, L.W., an African-American female student, and several other students came to Plaintiff and reported their discontent with their Science teacher, Charles Pribley, a Caucasian man, and the inappropriate comments he was making about L.W.'s body shape, how he liked her shape. The students reported to Plaintiff that teacher Charles Pribyl said "the difference between someone being from Alabama and Tennessee is you are the only 10 I see." Student L.W. reported to Plaintiff that she felt uncomfortable being around teacher Charles Pribyl. Plaintiff instructed L.W. to tell her grandparents and Principal Kuyk about the occurrences.

19. On or about early November 2017, Student S.C.W., an African-American female student, approached Plaintiff about the inappropriate comments Charles Pribyl was making in class. Plaintiff instructed her to report it to the office and Principal Kuyk. Student S.C.W. then confided that teachers started "harassing" her by giving her dress code violations. Plaintiff instructed her to speak with Chalmers. Later, S.C.W. reported to Plaintiff that Chalmers spoke with her and said he told the faculty to "leave her alone."

20. On or about November 28, 2017, student L.W. approached Plaintiff again saying she was told by principal Kuyk that she had to attend teacher Charles Pribyl's class despite being uncomfortable around him. L.W. reported that when she told Principal Kuyk that teacher Charles Pribyl continues to approach her privately to try to apologize and that he made her feel uncomfortable, Principal Kuyk responded by saying, "at least he apologized to you!" Student L.W. was very distraught and kept saying "I feel uncomfortable around him" and that Principal Kuyk was ignoring her concerns and not taking her seriously.

21. On or about November 29, 2017, Plaintiff filed a Written Report of Suspected Child Abuse/Neglect with the State of Alabama Department of Human Resources DHR alleging abuse of L.W. by Charles Pribyl at Holy Family. Charles Pribyl was suspended by Holy Family with pay on December 2, 2017 and returned on Monday, February 19, 2018. During his suspension, Charles Pribly maintained contact with students, directed assignments and graded papers.

22. On or about January 4, 2018, student K.D.M, an African-American male, reported to the office regarding his concern about his grade in Charles Pribyl's class. Student K.D.M. reported being uncomfortable in Charles Pribyl's class because Pribyl asked him to kiss his lab partner during the class. Student K.D.M. refused and could not understand why his teacher would ask him to do that. After Student K.D.M. refused, he felt uncomfortable in the class, and thought Charles Pribyl may retaliate by giving him a bad grade. Student K.D.M. alleges he reported the matter to the school counselor, Griena Knight Davis, but he asked her not to tell anyone or report it further, and his parents. Student K.D.M stated his mom was fearful that he would be "kicked out of school like everyone else" for reporting Charles Pribyl, so that was the reason he kept quiet.

23. On about January 22, 2018, Plaintiff was in the office when student M., an African-American male, came to tell Plaintiff that teacher Kline asked students M., A., D. and himself to spy on Plaintiff and tell report everything Plaintiff does to the school office to Principal Kuyk. Student M. was uncomfortable with the request. Plaintiff instructed student M. to report this to Chalmers. Within seconds of Student M's visit, Student M., an African-American female, visited Plaintiff in the office to report the same information about being asked to spy on Plaintiff and report everything Plaintiff does to the school office. Plaintiff sent her to give the report to Chalmers.

6

24. On or about January 22, 2018, Plaintiff visited Chalmers about the retaliatory actions she was receiving from the leadership as result of her filing the DHR report and listening to student's complaints about Charles Pribyl. Plaintiff expressed her disgust in Principal Kuyk and her close team of Caucasian teachers (Kline and Weekly, specifically) using students for personal retaliatory purposes.

25. On or about January 23, 2018, Chalmers met with teacher Weekly and on or about January 25, Chalmers met with teacher Kline and Plaintiff.  In his meeting with Plaintiff, Chalmers states, "Mrs. Kline is crazy and everything you told me is true."  Plaintiff expressed her sorrow to Chalmers and he responded, "don't be. She has been doing stuff like this for a while but using students is the most concerning part."

26. On or about February 16, 2018, Principal Kuyk sent a letter to the parent/guardian of Student L.W. stating "I received a letter from DHR stating they did not find evidence of wrong-doing for Mr. Charles Pribyl, L's science teacher.  We feel confident that DHR conducted a thorough investigation before making their decision.  Therefore, Mr. Pribyl will be returning to Holy Family Cristo Rey Catholic High School on Monday, February 19, 2018.  Although Mr. Pribyl has been exonerated, if  L chooses to, she may sit in Mrs. Gibson's class everyday during 6th period.  She may not sit in the library as there is no staff member available to supervise her in that location. L will need to let me know whether she will stay in the Chemistry classroom or go to Mrs. Gibson's room.  If you have any questions about this, please email me." The parents of L allege they never received a final report of DHR's investigation.  Plaintiff never received a response from DHR.

27. On or about February 26, 2018, in the morning, Student A.H.'s mother approached Plaintiff and asked if she were Cortney Hawkins. Plaintiff answered affirmatively. The parent then asked if the principal were in because she was not "going to tolerate Mr. Studemire calling these students, or at least my daughter a 'jigg boo or scalway'!" Plaintiff directed the parent to Chalmers' office.

28. On or about March 8, 2018, just before first period, Kuyk approaches Plaintiff and tells her to take her jacket off, which has a hood hanging down the back, in the presence of two Caucasian teachers, Evens and Sergant. Rather than cause a scene, Plaintiff walks away to prepare for her first period class. A few minutes later, Plaintiff receives an email directing her to take off her jacket with a hood. It was time to start her class. Plaintiff replied to the email by stating she was cold and that her classroom was without heat.

29. On or about March 8, 2018, during 3rd period, Plaintiff went to her department development meeting. She was wearing her jacket with the hood hanging in the back. In the presence of fellow teachers, Principal Kuyk yelled and shamed Plaintiff, then continued the department meeting. While sitting in the meeting, Kuyk pulled out her cellphone, aimed it at Plaintiff as a flash went off on her phone. After the meeting, Plaintiff notices a text message from Kuyk directing Plaintiff to leave. Plaintiff gathered her belongings and asked for a letter stating why she had to leave. Plaintiff and Kuyk walked to Kuyk's office where Plaintiff waited 15 minutes for the letter to be written. When presented with the letter, Plaintiff refused to sign it because she disagreed with its contents. Kuyk refused to give Plaintiff a copy because Plaintiff would not sign the paper acknowledging receipt. Kuyk proceeded to call the police stating that Plaintiff was suspended and refused to leave the school and accused her of trespassing. Everything

took place in the presence of students, some of whom were visibly upset about the sequence of events.

30. On or about March 12, 2018 Plaintiff emailed Chalmers requesting information about when she could return to work. Chalmers, then, informed Plaintiff that she was terminated due to dress code violation at will as of March 8, 2018 and that Kuyk would send her termination letter via mail.

## FIRST CAUSE OF ACTION
### Retaliatory Hostile Work Environment
### 42 U.S.C. § 2000e, et seq., against DIOCESE, HOLY FAMILY , CRISTO REY, KUYK, and CHALMERS  42 U.S.C. § 1981 against DIOCESE, HOLY FAMILY and CRISTO REY

31. Plaintiffs re-allege and incorporate by reference the above paragraphs with the same force and effect as if fully set forth herein and further state as follows:

32. Cheryl Kuyk was Plaintiff's immediate manager. Kuyk was fully aware of Plaintiffs report to DHR regarding teacher Charles Pribyl and his alleged inappropriate conduct with a female student, and students' complaints to her office about Charles Pribyl. Kuyk's conduct to Plaintiff after the filed report created a retaliatory hostile work environment.

33. Kuyk engaged in retaliatory conduct against the Plaintiff. Kuyk's conduct after Plaintiff sent students to the office with their concerns and after Plaintiff filed a DHR complaint on behalf of a student, included but was not limited to:  1) increased scrutiny of Plaintiff; 2) continual isolation of Plaintiff; 3) humiliating Plaintiff on a weekly basis in front of her peers and students, including having Plaintiff escorted from the building after her termination; 4) participating in racially offensive conversations around Plaintiff;  5) taking no action; and 6) terminating Plaintiff.

34. Kuyk's conduct was severe, pervasive, and humiliating enough to adversely affect the terms and conditions of Plaintiff's employment and personal life. Kuyk's actions were such that a reasonable person would find hostile or abusive and creating an environment of retaliation. Plaintiff subjectively perceived Kuyk's conduct as such.

35. After Plaintiff told three students to take their grievance to the school leadership and Plaintiff filed the DHR complaint, she was intensely scrutinized and treated differently than other employees. Kuyk engaged students and other teachers in her ploy to find a reason to fire Plaintiff. Plaintiff felt embarrassed, humiliated, and emotionally distressed to be treated in this manner as no other employee at a comparable level was treated this way.

36. Plaintiff underwent special training given by Holy Family about how to handle matters of misconduct, such as the verbal sexual comments to students made by teacher Pribiyl, that taught attendees to, first report to the Principal, then file a complaint with DHR. The training further instructed teachers to file directly to DHR if the matter warrants so the child would be protected, then report to the Principal or President. When Plaintiff following established procedures, Defendants retaliated against her.

37. Chalmers was Plaintiff's secondary manager. Chalmers was fully aware of Plaintiff's report to DHR regarding teacher Charles Pribyl and Pribyl's inappropriate conduct with L.W., a female student in his classroom. Further, Chalmers was aware of the racial tension created in the school under its new principal leadership and the increased scrutiny of Plaintiff after the DHR complaint. Chalmers' conduct to Plaintiff after the filed report created a retaliatory hostile work environment.

38. Additionally, Plaintiff was made aware that Kuyk began seeking information by which to target Plaintiff for termination and engaged students in her ploy. Three students reported such to Plaintiff and expressed their discomfort about the request. One student told her parent.

39. On March 8, 2018 Plaintiff was terminated in retaliation for her protected activity under the pretext of failure to follow a dress code when most of the teachers, allegedly, violate the dress code and one of the Fathers who teach frequently wears a jacket with a hoodie and has not been terminated.

40. DIOCESE, HOLY FAMILY and CRISTO REY knew or should have known of the retaliatory conduct toward Plaintiff and did not take prompt, effective remedial action. DIOCESE, HOLY FAMILY and CRISTO REY are thus jointly and severally liable, under Title VII, 42 USC SECTION 1981, for the retaliatory hostile environment experienced by Plaintiff.

41. DIOCESE, HOLY FAMILY and CRISTO REY knew or should have known the past work background of principal Kuyk and her perceived prejudices or discomfort in leading a majority African-American school.

42. As a result of Defendants DIOCESE, HOLY FAMILY and CRISTO REY's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, lost wages, raises, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including depression, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

43. DIOCESE, HOLY FAMILY and CRISTO REY are jointly and severally liable for the actions and/or inactions of their principals, managers and agents.

**SECOND CAUSE OF ACTION**
**Racial Discrimination - Disparate Treatment**
**42 U.S.C. § 2000e, et seq., against DIOCESE,**
**HOLY FAMILY, CRISTO REY, CHALMERS, and**
**KUYK 42 U.S.C. § 1981 against DIOCESE, HOLY**
**FAMILY and CRISTO REY**

44.     Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

45.     Plaintiff is a black female. Plaintiff has been discriminated against and treated differently than similarly-situated white employees solely because of her race.

46.     Specifically, Plaintiff's was terminated from her employment within the Diocese, Holy Family and Cristo Rey on a whim, citing her wearing of a jacket that was, allegedly against a written policy, in theory, that, in fact, other teachers violated on a daily basis. Defendant Kyuk was heard by at least three teachers in a breakroom saying she didn't want teachers dressing "like a slut" but did not describe what "dressing like a slut" meant. Plaintiff was escorted out of the building by police in front of students as if she were a criminal as though she had been fired for wrongdoing.

47.     White employees similarly situated to Plaintiff were not terminated for their manner of dress nor was Pribyl fired for his sexual undertones in comments to a Black female student, and inappropriate interactions with his students when asked a Black male student to kiss his lab partner in front of the entire Science class.

48.     A Father, who is a teacher, wears a black jacket with a hoodie frequently and has not be counseled nor fired and was, in fact, wearing the black jacket with a hoodie on the day Kyuk loudly accused Plaintiff, in front of peers and students, that she was violating a teacher dress code and proceeded to call the police to escort her out – also in front of students.

49. Kyuk dresses in light blue jeans and long sweater reaching mid-calf with wide collar that hangs toward the back; yet, blue jeans is listed in the teacher's dress code as improper attire.

50. Plaintiff contends that her firing due to not following a dress code was pretextual and actually retaliatory discharge for notifying DHR regarding Pribyl's indiscretions and the fact that he is White, the student is Black and Kyuk's perceived disdain of the students she serve.

51. Defendants DIOCESE, HOLY FAMILY and CRISTO REY knew or should have known of the racial discrimination against Plaintiff and did not take prompt, effective remedial action. Defendants are thus jointly and severally liable for racial discrimination under Title VII and Section 1981.

52. As a result of Defendants DIOCESE, HOLY FAMILY and CRISTO REY's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, lost wages, raises, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including depression, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

53. DIOCESE, HOLY FAMILY and CRISTO REY are jointly and severally liable for the actions and/or inactions of their principals, managers and agents.

## 42 U.S.C. § 1981 against DIOCESE, HOLY FAMILY AND CRISTO REY

54. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

55. Plaintiff is a black female.

56. Plaintiff has been discriminated against and treated differently than similarly-situated employees solely because of her race.

57. Defendants, through the conduct of their agents, have violated Plaintiffs rights under Title VII.

58. Defendants, through the conduct of their agents, have violated Federal Law under Title I funds Defendants are receiving on behalf of the indigent and minority students they serve.

59. Defendants are jointly and severally liable for the actions and/or inactions of their managers and agents.

60. As a result of Defendants' actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff has suffered injury including pain, humiliation, mental.

### THIRD CAUSE OF ACTION
### Racial Discrimination
### Against Defendants John Chalmers & Cheryl Kuyk,
### Under the Equal Protection Clause, through 42 U.S.C. §1983

61. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

62. Plaintiff has been discriminated against and treated differently than similarly-situated white employees solely because of her race. Specifically, Plaintiff was terminated from her employment but similarly situated white employees were not.

63. Plaintiff, a black woman, was the only teacher not in compliance with the teacher dress code to be terminated, while white teachers were not chastised, reprimanded, nor fired in similar mode of dress.

64. Defendant Kuyk failed to set example for following the teacher dress code as she frequently wore blue jeans in violation of the dress code. Such conduct set the example for other teachers, including Plaintiff Hawkins.

65. Defendant Chalmers knew or should have known that the teacher dress code was being violated by the Principal and several teachers, including a Father who frequently wore a black jacket with a hoodie, and that supporting firing Plaintiff was a pretextual action in retaliation her Plantiff filing a DHR complaint on behalf of a Black female student about a white teacher who was sexually harassing her and members of his class with sexual comments.

66. Defendants Kuyk and Chalmers also subjected Plaintiff to racially offensive conversations, and promoted an atmosphere of racial tension between teachers and students.

67. Defendant Kuyk and Chalmers has violated Plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment.

68. As an agent of HOLY FAMILY, Defendants Kuyk and Chalmers, acting under color of state law, violated Plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment.

69. As a result of Defendants Kuyk' and Chalmers' actions, Plaintiff has suffered extreme harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendants is violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, Equal Protection Clause and 42 U.S.C. § 1981.

2. Grant plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Equal Protection Clause.

3. Enter an Order requiring Defendants to make Plaintiff whole by awarding Plaintiff back-pay (plus interest), instatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is their only means of securing adequate relief.

          **PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/ Ida Tyree Hyche*

**Ida Tyree Hyche (AL-6669I67H)**

*Attorney for the Plaintiff*
**TYREE HYCHE & DIXON, LLC**
The Historic Massey Building
2025 Third Avenue North, Suite 200
Birmingham, Alabama 35203
Telephone:     (205) 777-5220
Facsimile:      (205) 419-2959

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

Birmingham Diocese of the Roman Catholic Church
Dr. Robert E. Witt, Chancellor
2121 Third Avenue North
Birmingham, AL. 35203
Phone: (205) 838-8322

Father John Chalmers
Registered Agent for Holy Cristo Rey Catholic School, Inc.
2001 19th Street, Ensley
Birmingham, AL 35218

Cheryl Kuyk, Principal, Holy Family Cristo Rey Catholic School, Inc.
2001 – 19th Street, Ensley
Birmingham, AL  35218

Cristo Rey Network
Elizabeth Goettl, President and Chief Executive Officer
14 East Jackson Boulevard, Suite 1200
Chicago, IL  60604